UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11824-RWZ

PATRICIA ESTRELLA

v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY et al.

MEMORANDUM OF DECISION

September 6, 2011

**ZOBEL, D.J.**

Plaintiff Patricia Estrella ("Estrella") seeks review of the denial of her disability claim by defendant Hartford Life and Accident Insurance Company ("Hartford"). For the reasons discussed below, I find that Hartford's denial of benefits was not arbitrary and capricious and therefore allow defendant's motion for summary judgment and deny plaintiff's corresponding motion.

**I.     Background and Procedural History**

In 2007, Estrella, then employed as a network engineer for Sprint United Management Company ("Sprint"), sought disability benefits due to a degenerative nerve condition, as well as carpal tunnel syndrome and fibromyalgia. She received salary continuation benefits for the period between September 12, 2007 and March 12, 2008. On March 24, 2008, Sprint submitted a long-term disability claim packet to Hartford. On June 10, 2008, Hartford determined that Estrella had full work capacity and denied her application for long-term disability benefits. The claim was also denied

on appeal. Defendant Hartford is the claims administrator under the plan.

On December 23, 2009, plaintiff challenged Hartford's denial in a four-count complaint brought against Sprint, Hartford, and Dr. Peter Mosbach alleging that: (1) the denial of benefits was arbitrary and capricious in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829, as amended, 29 U.S.C. § 1132(a)(1)(B) (Count I); (2) Dr. Mosbach had a conflict of interest when rendering his opinion and thereby interfered with plaintiff's rights protected by the Americans With Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA") (Count II); (3) Dr. Mosbach's conflict constitutes tortious interference with contractual or advantageous relations (Count III). Plaintiff seeks damages, past and future benefits, and in a separate count (Count IV), attorneys' fees and costs under 29 U.S.C. § 1132(g). On February 8, 2010, plaintiff voluntarily dismissed her claims against Dr. Mosbach. (Docket # 25). Consequently, Counts II and III are dismissed.

Defendant moved for summary judgment (Docket # 34), and plaintiff sought discovery as to the extent of the alleged conflict. On November 23, 2010, this court granted leave for plaintiff's motion to take limited discovery pertaining to an alleged conflict of interest on the part of defendant's reviewing physician, Dr. Mosbach. (Docket # 42). As that discovery has been completed, defendant's motion for summary judgment is now ripe.

## II.     Legal Standard

### A.     Standard of Review

A district court generally reviews an ERISA plan administrator's benefits

determinations de novo.  Gross v. Federal Exp. Corp. Long Term Disability Plan, 707 F. Supp.2d 67, 71 (D. Mass. 2010).  However, where, as here, the ERISA plan grants the plan administrator discretionary authority in the determination of eligibility for benefits, the administrator's decision must be upheld unless it is "arbitrary, capricious, or an abuse of discretion." Cusson v. Liberty Life Assur. Co. of Boston, 592 F.3d 215, 224 (1st Cir. 2010) (citing Gannon, 360 F.3d at 213 (1st Cir. 2001)).  A decision to deny benefits to a beneficiary will be upheld under the "arbitrary and capricious" standard if the administrator's decision "[was] reasoned and supported by substantial evidence." Medina v. Metropolitan Life Ins. Co., 588 F.3d 41, 45 (1st Cir. 2009).  Substantial evidence does not require that there be no contradictory evidence, only that the evidence is sufficient to reasonably support the administrator's conclusion. Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).

    **B.**    **Summary Judgment**

A challenge of the denial of employee benefits arises under Section 502(a) of ERISA, 29 U.S.C. § 1132(a)(1)(B). In ERISA cases, "where review is based only on the administrative record before the plan administrator and there is an ultimate conclusion as to disability to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005).  The court's role is to make a determination "whether the administrator's action on the record before him was unreasonable." Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003).  Doubts are resolved in favor of the administrator, and "no special inferences are to be drawn in favor of the plaintiff resisting in summary

judgment." <u>Id.</u>; <u>see</u> <u>also</u> <u>Orndorf</u>, 404 F.3d at 517 (where summary judgment is simply a vehicle for deciding the issue, "the nonmoving party is not entitled to the usual inferences in its favor.").

### III.     Factual Background

#### A.     Plaintiff's Employment and Disability

Estrella worked at Sprint from September 8, 1997 to August 14, 2007. She was responsible for "working on 911 switch translations," which required keyboard use with continuous sitting and only occasional reaching. The job required her both to talk on the phone and type at the computer. Sprint paid her a base salary of $96,230.51 per year and she managed a team of 15 employees.

She left work on August 14, 2007, complaining of pain and fatigue. She was later diagnosed with, among other ailments, rheumatoid arthritis, left upper extremity myofacial pain, fibromyalgia, intervertebral disc disorder with myelopathy lumbar and cervical radiculopathy.

#### B.     The Long Term Disability Plan

Sprint's Basic and Supplemental Long Term Disability policy provides that participants who become disabled while insured under the plan will be paid a monthly benefit. <u>See</u> Sprint/United Management Company Group Benefit Plan effective January 1, 2007 (A.R. 386-418). She was covered under both a short-term disability plan ("STD Plan") and a long-term disability plan ("LTD Plan"). Hartford is both the administrator of and payer of benefits under the LTD Plan. Under the terms of the insurance policy ("the

Policy") for the LTD Plan, the definition of "Disability" or "Disabled" for LTD purposes varies over time with the duration of the disability. For the initial 24-month period after a claimant switches into the LTD Plan from the STD Plan, a person is considered "disabled" if she has a listed injury and is unable to perform "one or more of the [e]ssential [d]uties of [her] occupation." (A.R. 404-405 at ¶¶1-2.) However, after 24 months, a person is considered "disabled" if she is "prevented from performing one or more of the [e]ssential [d]uties of [a]ny occupation." Id. at ¶ 3. Qualifying injuries include bodily injury, sickness, and mental illness, among others. The policy places the burden of providing proof of disability on the claimant. Id.

    **C.**    **Disability Claim**

Estrella submitted her disability claim to Hartford on March 24, 2008. (A.R. 366-384.) Her complaints included "neck pain, head & shoulder arm tingling, tiredness, aching constant." Id. She included a medical report from Dr. Joseph J. Doerr (psychiatrist). Hartford conducted a telephonic interview with claimant on March 31, 2008, and later requested further records from Dr. Matthew Messina (pulmonologist), Dr. Michael W. Egan (rheumatologist), and Dr. Jean Peeler (chiropractor).

Hartford received reports from Dr. Doerr describing a diagnosis of chronic pain syndrome with left upper extremity myofacial component. She was seen for headaches and prescribed Ultram and Zanalflex. (A.R. 191.) The medical records from Dr. Messina show that Estrella was seen for asthma, rhinitis, excema, osteopenia, fibromyalgia, and chronic fatigue. Dr. Eagan diagnosed Estrella with fibromyalgia, left

cervical radiculopathy, fatigue and weakness.  Finally, the medical reports submitted by Dr. Peeler revealed a diagnosis of intervertebral disc disorder with myelopathy lumbar, head and occipitocervical region subluxation, pelvic, hip and public region subluxation.  She received multiple adjustments, hot packs, cross friction massages and trigger point therapy.

On May 30, 2008, Hartford Medical Case Manager Italialee Bright, R.N., performed a functional assessment based on the records received to date.  She concluded that "[t]he medical evidence submitted and reviewed does not support [Estrella's] inability to function at her previous level of primarily sedentary function."  She further reported that while "it is reasonable that [Estrella]would have intermittent discomfort, ... this should not preclude her from performing at her previous level of function."  (A.R. 10.)

### D. Denial

In a written decision dated June 10, 2008, Hartford denied Estrella's claim on the ground that the information submitted did not support her claim of total disability.  (A.R. 189-192).  Hartford concluded that her medical condition should not prevent her from performing her previous work at a sedentary level.

After considering the medical information submitted by the several doctors previously identified, Hartford concluded that plaintiff's medical condition would result in "intermittent discomfort" but such discomfort "should not prevent [her] from performing sedentary work related activities with the opportunity to alternate sitting and

standing as needed." (A.R. 191.)

### E. Appeal

By letter dated February 27, 2009, Estrella appealed Hartford's decision. On appeal, Estrella submitted "additional medical information," including two additional medical reports, in support of her claim, one from Dr. Thomas Lichauco (a family practice physician; board certified in both family medicine and occupational health medicine) and the other from Dr. Stone (a neuropsychologist). In its response dated March 19, 2009, Hartford requested review of the new information presented by an outside medical vendor, MES Solutions (MES). MES provided a peer review report by Dr. Mark Burns, a rheumatologist and Dr. Peter Mosbach, a neuropsychologist.

Dr. Burns concluded that "no impairment is supported from a rheumatological standpoint...Fibromyalgia is a waxing and waning condition and people are normally able to work." He further noted that there was no medical documentation, as Estrella went untreated for the last year. Dr. Mosbach separately concluded that there was no basis for any cognitive impairment. He concluded that the records did not "show evidence of functional restrictions or limitations from a cognitive or mental/nervous perspective that would be supported as of [August 15, 2007] to the present." (A.R. at 64.)

On April 14, 2009, Hartford denied her appeal. (A.R. 23-26.)

## IV. Analysis

### A. Conflict of Interest

### 1. Effect on Standard of Review

In ERISA cases, the entity that administers the plan often both determines whether an employee is eligible for benefits and pays benefits out of its own pocket. Metro Life Ins. Co. v. Glenn, 554 U.S. 105, 128 (2008). The U.S. Supreme Court has held that this dual role creates a structural conflict of interest. Id. The existence of this conflict of interest does not change the standard of review; rather, it "should be weighed as a factor in determining whether there is an abuse of discretion."[1] Id. at 115. See also Cusson v. Liberty Life Assurance Co. of Boston, 592 F.3d 215, 224 (1st Cir. 2010).

### 2. Effect on the Merits

Under some circumstances, however, the structural conflict will be "accorded extra weight in the court's analysis." Cusson, 592 F.3d at 224. For example, the conflict "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision." Metro Life Ins. Co., 554 U.S. at 117. By contrast, where the administrator has taken "active steps to reduce potential bias and to promote accuracy," the conflict will be held to be "less important (perhaps to the vanishing point)." Id. The First Circuit instructed in Denmark v. Liberty Life Assur. Co. of Boston, 566 F.3d 1, 9 (1st Cir. 2009), that courts

---

[1]The argument that the existence of a structural conflict of interest changes the standard of review from arbitrary and capricious to the "combination of factors" test was rejected by the First Circuit in Cusson v. Liberty Life Assur., 592 F.3d 215, 224 (1st Cir. 2010) (disagreeing with plaintiff's argument that the Supreme Court's decision in Glenn changed the standard of review from an abuse of discretion standard to a 'combination of factors' standard in cases where there was a structural conflict of interest.").

are "duty-bound to inquire into what steps a plan administrator has taken to insulate the decisionmaking process against the potentially pernicious effects of structural conflicts."  The claimant bears the burden of proving that the conflict influenced the administrator's decision.

Here, plaintiff notes that in 2008, Hartford had revenue of $4.3 billion yet suffered an operating loss of $6 million.  Nevertheless, Hartford paid bonuses to its employees in the appeals unit.

Without more, the fact that Hartford suffered operating losses yet paid bonuses to employees in the appeals unit does not demonstrate that the conflict influenced the administrator's decision.  Moreover, Hartford points to several active steps it took to eliminate any potential conflict from impacting claims decisions.  Specifically, it (1) provided for a second person to review and sign off on initial claims decisions (in the case, Ms. Rodriguez); (2) maintained a separate unit to consider appeals of denied claims, and provided for appeal review by an employee, Ms. Kelly, who had no role in the initial decision and no communications with the employees who handled the initial claim; (3) "walled off" its ability analysts by ensuring their compensation is not tied in any way to claims denials; and (4) retained independent third-party medical vendors such as MES to supply reviews by appropriately credentialed physicians.  In light of these steps, this court cannot conclude that the structural conflict in fact influenced the administrator's decision.

    **B.**    **Substantial Evidence**

Plaintiff contends that Hartford's denial was arbitrary and capricious on both procedural and substantive grounds. First, she contends that substantial evidence demonstrates that she suffers from intractable pain that prevents her from working. Second, she lists several objections to Hartford's denial, each of which is addressed in turn below.

A claimant seeking benefits under an ERISA plan bears the burden of demonstrating entitlement thereto. Morales–Alejandro v. Med. Card Sys., Inc., 486 F.3d 693, 700 (1st Cir. 2007). Substantial evidence is "evidence reasonably sufficient to support a conclusion." Gannon v. Metropolitan Life Ins. Co., 360 F.3d 211, 213 (1st Cir.2004). Sufficiency does not disappear "merely by reason of contradictory evidence." Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).

Here, the medical records clearly support Estrella's claims of chronic pain. However, Hartford does not contest Estrella's claims of chronic pain; rather, it disputes the effect of that pain on her ability to work.

Estrella's job required her to work at a computer 50% of the time and talk on the phone 50% of the time, which required her to be seated continuously. Even crediting her condition, Hartford's conclusion that she is nonetheless able to work is supported by substantial evidence. None of Estrella's four treating practitioners concluded that she was unable to work. Moreover, none addressed whether she would be precluded from performing a job involving alternating sitting and standing.

The lone doctor to conclude that she could not work, Dr. Lichauco, concluded

that "[Estrella's] pain behavior is appropriate and compatible with her history. She cannot sit still. She moves slowly, with a guarded gait." (A.R. 132.) In a brief statement, he concluded that even though Estrella's *physical* condition alone did not impair her from working she nonetheless had been "disabled from her previous occupation since early 2007" by a combination of physical and mental complaints. (A.R. at 141.)

Hartford's medical experts, Drs. Burns and Mosbach, disagreed with Dr. Lichauco. Although plaintiff attacks both their method and their conclusion, the primary point of contention was Drs. Burns' and Mosbach's disagreement with Dr. Lichauco's statement that Dr. Stone's evaluation in 2009 provided evidence that Estrella had been impaired by a combination of physical and psychological symptoms in early 2007. Dr. Stone's evaluation revealed no cognitive decline. Even if it had, it did not bear on Estrella's condition during the pertinent time period. Moreover, treatment records during the pertinent time period said nothing about psychological symptoms.

### C.     Specific Objections

#### 1.     Procedural Violation

Section 503 of ERISA sets forth certain procedural safeguards to ensure that claimants have adequate information regarding their claim and/or its denial. That section requires that an adverse determination letter shall set forth "a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 U.S.C. § 1133; 29

CFR § 2560-503.1(g)(1)(iii).

Estrella contends that Hartford's denial was based, in part, upon the failure of four of Estrella's treating doctors to respond to requests for information from Hartford. Estrella notes that this justification was not set forth in Hartford's adverse benefit decision letter of June 10, 2008. While the regulation requires the administrator to provide a description of material or information necessary for the claimant to "perfect the claim," 29 CFR § 2560-503.1(g)(1)(iii), Hartford has never taken the position that Estrella's claim was not perfected. See Wolfe v. J.C. Penney Co. Inc., 710 F.2d 388, 393 (7th Cir. 1983), rev'd on other grounds by Casey v. Uddeholm Corp., 32 F.3d 1094, 1099 n. 4 (7th Cir.1994) (where administrator requested additional "medical information," administrator had an obligation to "specify with some detail what type of information" was necessary). Nor has Hartford suggested that her claim was denied because her doctors failed to submit required forms. Rather, her claim was rejected because the information they did submit simply did not support her claim.

    **2.    Substantive Violations[2]**

        **a.    Hartford Relied on So-Called "Hired Guns"**

Estrella objects that Hartford improperly relied upon so-called "hired guns" — crediting the opinions of a non-examining physician and a non-examining psychologist

---

[2]Estrella included one additional objection regarding her receipt of short-term disability payments during the elimination period. However, she has acknowledged that the payments she received were salary continuation benefits, and not short-term disability payments. See Letter from Jonathan M. Feigenbaum, counsel to Estrella dated April 22, 2011 (Docket # 53). Therefore, this court need not address the issue.

over her examining physician and examining neuropsychologist.  The First Circuit has consistently rejected the argument that the opinions of independent and non-examining medical records reviewers are not "substantial evidence" because they receive payment for their work, because they did not physically examine the claimant, or because they disagree with treating physicians.  See, e.g., Cusson, 592 F.3d at 215 (1st Cir. 2010) (affirming grant of summary judgment affirming decision denying claim and noting that a nonexamining physician's review of a claimant's file may be reliable medical evidence).  See also Tsoulas v. Liberty Life Assur. Co., 454 F.3d 68, 81 (1st Cir. 2006) (rejecting critiques of non-examining physician and holding that "it is not for a court to determine how much weight [a non-examining medical consultant] should have accorded "a particular piece of evidence].").

### b. Hartford's Conclusion That Estrella Could Perform Sedentary Work

Next, Estrella objects that the denial unfairly "concluded that Estrella had the type of sedentary occupation that afforded her the flexibility to sit and stand at will."  Hartford's denial did not draw such a conclusion.  Rather, Hartford concluded that she was able to perform a job which allowed her to alternatively sit and stand.

### c. Failure to Consider the Constellation of Estrella's Ailments

Third, Estrella argues that the denial was erroneous inasmuch as it failed to consider the impact of the constellation of her ailments on her work.  See McDonald v. Secretary of Health and Human Services, 795 F.2d 1118, 1120 (1st Cir. 1986)

(applying regulation applicable to social security disability cases, 20 CFR § 404.1523, requiring SSA to consider "the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").  This argument is belied by the record.  Hartford did consider the constellation of her ailments along with their aggregate or cumulative effect.  See A.R. 191 (noting that claimant was seen for, among other ailments: chronic pain syndrome, with left upper extremity myofacial component, headaches, asthma, rhinitis, excema, osteopenia and fibromyalgia/chronic fatigue).  Hartford noted that "[w]e considered all of the evidence in your claim file in making our decision...[t]he combined information in your file does not show that you are unable to perform the Essential Functions of Your Occupation...."  (A.R. 192.)

### d.     Failure to Consider the Non-Physical Aspects of Estrella's Job

Fourth, Estrella contends that the claims administrator erred in failing to consider any factor other than the physical aspects of her occupation as a network engineer and failing to obtain an accurate job description.  This argument is without merit.  Hartford investigated Estrella's occupational duties by asking Sprint to provide information regarding those duties and then reviewing the information submitted.  Moreover, Hartford considered, and rejected, the conclusion that non-physical aspects of her job, (i.e., those that would affect her mental health), compelled the conclusion that she is disabled.  See Report of Dr. Mosbach (concluding that the records did not "show evidence of functional restrictions or limitations from a cognitive or mental/nervous perspective that would be supported as of [August 15, 2007] to the present").  (A.R.

14

64.)

### e. Hartford's Alleged History of Unfair Claims Determinations

Finally, Estrella contends that the structural conflict issue should be given "additional weight" because Hartford has a history of unfair claims determinations. In support of her contention, Estrella states that Hartford has "created a culture of claim denial," whereby employees are rewarded when they deny claims and penalized when they allow claims. As evidence, plaintiff points to the performance appraisal of one Hartford case manager which stated that the number of cases the employee had closed where the claimant returned to work represented 32% of her caseload, "realiz[ing] a cost savings of approximately $4[.1 million] for the team." Docket # 1-2, Complaint Exhibit E.

Estrella's conclusion that there is a "culture of claim denial" does not follow from this one example. Plaintiff conceded that Hartford does not provide direct financial incentives to promote claim denials and terminations. There is no evidence of a "culture of claim denial," nor is such fairly inferred from the isolated performance evaluation in which remarks were made praising the employee's return to work, not denial, percentage. The employee in question is a rehabilitation case manager whose primary function is not to make decisions on claims, but rather to assist people in returning to work. Plaintiff's argument is without merit.

### V. Conclusion

Hartford's decision to deny Estrella long term disability benefits was not arbitrary

or capricious, and therefore Hartford's motion for summary judgment on the administrative record (Docket # 34) is ALLOWED.

|  |  |
|---|---|
|    September 6, 2011    |    /s/Rya W. Zobel    |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |